United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROL P SACHS,

Plaintiff,

v

REPUBLIC OF AUSTRIA, OBB HOLDING GROUP, OBB PERSONENVERKEHR AG,

Defendants.
_________________________________/

No C 08-1840 VRW

ORDER

Defendants the Republic of Austria and OBB Personenverkehr AG ("OBB") move to dismiss the above-captioned action based on, among other things, want of subject matter jurisdiction. Doc ##43 & 51. Plaintiff opposes OBB's motion, Doc #58, but does not oppose Austria's motion, Doc #60. Austria's motion to dismiss, Doc #51, therefore is GRANTED. For the reasons that follow, OBB's motion to dismiss, Doc #43, also is GRANTED.

United States District Court
For the Northern District of California

**I**

**This action arises out of an accident that occurred at a train station in Innsbruck, Austria on April 27, 2007, when plaintiff, while attempting to board a moving train, fell to the tracks and suffered severe injuries which resulted in the amputation of her legs above each knee. Doc ##43 at 10; 58 at 1-2.**

**On June 21, 2010, defendant OBB moved to dismiss the complaint based on four distinct theories: (i) the court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 USC §1602 et seq; (ii) the doctrine of forum non conveniens requires dismissal; (iii) the court lacks personal jurisdiction over OBB and (iv) international comity requires abstention. Doc #43. On October 15, 2010, plaintiff opposed the motion. Doc #58. A hearing was held on November 18, 2010. Doc #63.**

**On November 22, 2010, the court ordered plaintiff to file a supplemental memorandum addressing the court's subject matter jurisdiction under the FSIA. Doc #64. In particular, given that it is undisputed that plaintiff purchased her rail ticket from the Rail Pass Experts (a travel agent in Massachusetts) and not OBB, the court requested briefing on plaintiff's theory that defendant OBB conducted commercial activity in the United States. Id at 2-4. The court also requested briefing on OBB's personal jurisdiction argument. Id at 4. Plaintiff filed a supplemental brief on December 17, 2010, Doc #66, and additional briefing on December 18, 2010, Doc #67. On December 28, 2010, plaintiff filed an ex parte motion for permission to file an exhibit that plaintiff described as "excerpts from the Eurail.com website not to exceed two pages."**

United States District Court
For the Northern District of California

Doc #68. On January 3, 2011, defendant filed an opposition to plaintiff's ex parte motion, Doc #69, and on January 13, 2011, defendant filed a supplemental brief addressing plaintiff's additional arguments under the FSIA, Doc #70.

II

A

In analyzing OBB's motion to dismiss, the court "assume[s] [plaintiff's factual] allegations to be true and draw[s] all reasonable inferences in [her] favor." Doe v Holy See, 557 F3d 1066, 1073 (9th Cir 2009), quoting Wolfe v Strankman, 392 F3d 358, 362 (9th Cir 2004). The court need not, however, accept the "truth of legal conclusions merely because they are cast in the form of factual allegations." Id, quoting Warren v Fox Family Worldwide, Inc, 328 F3d 1136, 1139 (9th Cir 2003) (emphasis omitted).

B

"In 1976, to clarify the governing standards and to insulate the issue of sovereign immunity from the impact of case-by-case diplomatic pressures, Congress enacted the FSIA, 28 USC §§ 1330, 1602-1611." Doe, 557 F3d at 1072 (internal quotations and citation omitted). The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." Argentine Republic v Amerada Hess Shipping Corp, 488 US 428, 443 (1989). "Under the FSIA, a foreign state[1] is presumptively immune

[1] A foreign state "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 USC § 1603(a). An "agency or instrumentality of a foreign state" means any entity that (i) is a separate legal person, corporate or

United States District Court
For the Northern District of California

from suit unless a specific exception applies." Permanent Mission of India to the UN v City of New York, 551 US 193, 197 (2007). Here, plaintiff bases her allegation[2] of subject matter jurisdiction on the first clause of section 1605(a)(2), which provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> * * *
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state * * *.

28 USC § 1605. The court therefore evaluates whether plaintiff can establish that this exception applies.

C

The parties agree that the only relevant commercial activity within the United States was plaintiff's March 2007 purchase of a Eurail pass from the Rail Pass Experts, a corporate entity apparently located in Massachusetts. Doc ##1 at 1-2; 58 at 2. Plaintiff argues that because the purchase of the pass occurred in the United States, and her injury claim is based upon that commercial activity, the commercial activity exception applies and the court therefore has subject matter jurisdiction.

---

otherwise, (ii) is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof and (iii) is neither a citizen of a State of the United States nor created under the laws of any third country. Plaintiff does not contest that OBB is in fact an organ of the Republic of Austria. See Doc #58.

[2] As OBB points out, after its motion addressed the three clauses of the commercial activities exception, plaintiff, in opposition, argues only that her claim is "based upon OBB's commercial activity in the United States." Doc ##61 at 6; 58 at 2-4. The court therefore limits its analysis to that exception.

United States District Court
For the Northern District of California

The FSIA makes clear, however, that the relevant commercial activity must be undertaken "by the foreign state." 28 USC §1605(a)(2). Plaintiff does not allege that OBB sold her a Eurail pass. Instead, plaintiff lays out the following argument:

> OBB is a member [and owner] of the Eurail Group * * *. The [Eurail Group's] website[3] says that the 'Eurail passes are available from our wide network of Sales Agents worldwide' * * * [and] confirms that the Eurail Group represents OBB * * *. OBB has authorized the Eurail Group to sell passes directly to American citizens. * * * The issuing office was the Rail Pass Experts in Massachusetts[, which] * * * was the intermediary for the carriers in Europe including the OBB.

Doc #58 at 3. In her supplemental briefing, plaintiff expands on this theory and asserts that OBB authorized Eurail Group, its agent, to sell its railway passes and that Eurail Group created a sub-agency relationship with the Rail Pass Experts, which sold the railway pass to plaintiff. Doc #66 at 3-5.

Although plaintiff cites various points of California agency law in support of her theory, the controlling authority in the Ninth Circuit on whether acts by independent entities may be imputed to a foreign government is Doe v Holy See, 557 F3d 1066 (9th Cir 2009). In Doe, the plaintiff sought to attribute the actions of various entities to the Holy See (a foreign sovereign) for purposes of establishing subject-matter jurisdiction under an exception to the FSIA. Id at 1076-77. The Ninth Circuit adopted the standard articulated in First National City Bank v Banco Para el Comercio Exterior de Cuba ("Bancec"), 462 US 611 (1983), to the jurisdictional context of the FSIA. The court observed that "Bancec provides a workable standard for deciding" the question

---

[3] While it did not factor into the court's ruling, as a factual matter, plaintiff does not allege that she purchased the rail pass at issue via the internet or from the Eurail Group's website.

United States District Court
For the Northern District of California

whether "a particular individual or corporation is an agent of a foreign state." Doe, 557 F3d at 1079. The court confirmed that there is "a presumption in favor of separate juridical status for foreign state instrumentalities at the jurisdiction phase." Id. A plaintiff must allege sufficient facts to overcome this presumption in order to have actions by an independent entity imputed to the sovereign. Applying Bancec to the facts of that case, the court found that even though plaintiff had alleged the various instrumentalities were "agents" of the foreign state, "[his] complaint does not allege day-to-day, routine involvement of the [sovereign] in the affairs of the [instrumentalities]"; therefore, plaintiff's allegations were "insufficient to overcome the presumption of separate juridical status." Id at 1079-80.

Other circuits are in accord. For example, in Transamerica Leasing, Inc v La Republica de Venezuela, 200 F3d 843, (DC Cir 2000), the DC Circuit examined whether, for purposes of the "commercial activity" exception to the FSIA, the actions of a corporation owned by the defendant Republic of Venezuela could be attributed to the Republic. As in Doe, the court held that there is a presumption that a juridical entity has a separate legal status from that of the sovereign. Id at 847. The court ruled that the presumption can only be overcome where "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," or "where recognition of the instrumentality as an entity apart from the state would work fraud or injustice." Id at 847-48 (internal quotations omitted). The court rejected the notion that mere "apparent authority" could meet this standard, stating that "[w]e doubt * * * that a case of merely

apparent authority falls within the agency exception — an exception limited by its terms to situations in which the instrumentality 'is so extensively controlled by [the sovereign] that a relationship of principal and agent is created.'" Id at 850, quoting Bancec, 462 US at 629. Despite the fact that the Republic of Venezuela owned a majority of the corporation's stock, appointed the Board of Directors and President, was involved in certain operations of the corporation and engaged in other activity related to the corporation, the court concluded that the sovereign did not exercise sufficient control to allow it to be bound by the acts of the corporation for purposes of jurisdiction under the FSIA. Id at 850–55.

Plaintiff's allegations fall far short of meeting these standards. Plaintiff seeks to extend the cases above by imputing the actions of an alleged "sub-agent" (Rail Pass Experts) to a principal (OBB) via an alleged "agent" (Eurail Group). While plaintiff alludes to connections between OBB and the Eurail Group and between the Eurail Group and the Rail Pass Experts, there are no factual allegations or evidence that OBB exerted "day-to-day" control over either Eurail Group or Rail Pass Experts. According to plaintiff, OBB was merely one of many rail carriers that authorized Eurail Group to sell rail passes that would permit passengers to travel over OBB-controlled railways (along with those of the other carriers). Doc #66 at 1. Plaintiff does not dispute defendant's contention that the Eurail Group "has its own management and employees." Doc #43 at 18. Moreover, although OBB acknowledges the possibility that the Rail Pass Experts were a subagent of Eurail Group, plaintiffs have not alleged or argued

United States District Court
For the Northern District of California

that (prior to this action) OBB was even aware of the Rail Pass Experts's existence. The mere fact that OBB has authorized the Eurail Group to sell and distribute rail passes for travel over its railways, and that such a pass was sold by a third party travel agent to plaintiff is simply insufficient to establish the day-to-day involvement or "principal-agent" relationship necessary to defeat the presumption of separate juridical status. Holy See, 557 F3d at 1079-80. Indeed, as the court noted in its November 22 order, plaintiff's "unwieldy theory of subject matter jurisdiction would seem to ensnare all thirty members of the Eurail Group." Doc #64 at 4.

The court therefore finds the connection between OBB and the Rail Pass Experts too attenuated to establish subject matter jurisdiction. Because plaintiff fails to establish that the commercial activity here was in fact undertaken by "a foreign state," the commercial activity exception to sovereign immunity does not apply in this case. The court must therefore GRANT OBB's motion to dismiss. Doc #43.

III

Plaintiff also petitions the court for leave to conduct discovery on issues relating to subject matter jurisdiction, "[i]n the event the court is inclined to grant [OBB's] motion." Doc #58 at 8. OBB objects to this request, arguing that its draft answers, Doc #61-1 at 11-13, "show that the answers would not have changed anything." Doc #61 at 16. The court agrees. Plaintiff's proposed interrogatories are not calculated to establish that the commercial activity in question was undertaken by a foreign state or that OBB

exerted the "day-to-day, routine involvement" in either the Eurail Group or the Rail Pass Experts that would allow their acts to be imputed to OBB. Hence, the proposed discovery could not possibly alter the court's conclusion that the commercial activity exception to the FSIA is inapplicable.

Moreover, "it is only if a plaintiff has alleged 'specific facts that, if proved, sustain[] a nexus between particularized commercial activity and the claims asserted by the plaintiff' that courts allow limited discovery to confirm those facts: discovery 'cannot supplant the pleader's duty to state those facts at the outset of the case.'" Dames & Moore v Emirate of Dubai, 1996 WL 671279, *6 (ND Cal Nov 14, 1996) (Smith, J), quoting Arriba Ltd v Petroleos Mexicanos, 962 F2d 528, 537 n17 (5th Cir 1992). Plaintiff's complaint, however, does not allege an agency relationship between OBB and the Rail Pass Experts, or that the Rail Experts is a "foreign state" under the FSIA. See Doc #1 ("Plaintiff * * * purchased the railway ticket through defendants' agent, Eurail, and the American based company, the Rail Pass Experts."). Plaintiff's request for additional discovery is DENIED.

The court also DENIES plaintiff's ex parte request to file additional excerpts from the Eurail Group website. Doc #68. Defendant correctly points out that plaintiff's request was made well past the December 17, 2010 deadline set by the court for further briefing from plaintiff. Doc #64 at 4. Moreover, the court does not see how excerpts from the Eurail Group website could possibly alter the conclusion above. Indeed, plaintiff previously submitted pages from the Eurail Group website that establish, among

United States District Court
For the Northern District of California

other things, that the Eurail Group "represents and acts for the 30 European railway organisations [sic] that make up its membership." Doc #58 at 14. The court does not see how any additional pages from the Eurail Group website would establish that the Eurail Group is "so extensively controlled by [OBB]" — as opposed to its many other member railways — so as to permit the imputation of either the Eurail Group's acts or the acts of the Rail Pass Experts to OBB. Transamerica Leasing, 200 F3d at 850.

IV

For the above reasons, defendants' motions to dismiss, Doc ##43 & 51, are GRANTED. Plaintiff's motion for leave to file additional exhibits is DENIED. The clerk is DIRECTED to terminate all motions and close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge